```
             UNITED STATES DISTRICT COURT
              MIDDLE DISTRICT OF FLORIDA
                  FORT MYERS DIVISION
```

KIONTAY MOORE, also known as Timothy
Bullock

                Plaintiff,

vs.                                    Case No.  2:10-cv-29-FtM-29DNF

JAMES R. GEHRIS #2983,

                Defendant.
_____

## **OPINION AND ORDER**

### **I. Status**

This matter comes before the Court upon Defendant Gehris' Motion for Summary Judgment (Doc. #49, Motion), filed November 1, 2012. Defendant submits the following exhibits in support of his Motion. See generally Exhs. A-B:

- Transcript from Plaintiff's Deposition held on June 28, 2012 (Exh. A);

- Affidavit of James R. Gehris (Exh. B), attaching the following exhibits:

    Videotape Surveillance Footage of the incident that occurred on February 21, 2009 (Exhs. B-1(A) and B-1(B));

    Jail Incident Report, dated February 21, 2009 (Exh. B-2);

    Disciplinary Charges Settlement Agreement, dated February 27, 2009 (Exh. B-3);

- Nursing Encounter, dated February 21, 2009 (Exh. C);

- Nursing Evaluation Tool, dated February 22, 2009 (Exh. D);
- Correspondence to the Naples Jail Division from Dr. Ashish G. Sharma, Retina Consultants of Southwest Florida, dated December 9, 2009 (Exh. E).

The Court duly advised Plaintiff of the tenets of Rule 56, and directed Plaintiff to file a response within twenty-one days of the filing of a summary judgment motion. See June 24, 2011 Order (Doc. #22). Plaintiff elected not to file a timely response. See generally docket. On November 26, 2012, the Court afforded Plaintiff a second opportunity to file a response to the Motion. See November 26, 2012 Order (Doc. #55). The November 26, 2012 Order was returned as undeliverable and marked "return to sender (expiration of sentence)." See docket entry dated December 6, 2012. As of the date of this Order, Plaintiff has failed to advise the Court of his current address.[1] See generally docket. The Court deems this matter ripe for review without a response from Plaintiff.

## II. Applicable Standard

"Summary judgment is appropriate only if the movant shows that there is no genuine dispute as to any material fact and the movant

---

[1] Plaintiff was duly advised twice by the Court that he was required to notify the Clerk of Court of his current address if he was released and/or transferred from jail. See March 10, 2010 Order (Doc. #7) at ¶5 and June 27, 2011 Order (Doc. #22) at ¶ 7. Indeed, Plaintiff was warned that his failure to inform the Court of an address change may result in a dismissal of the case. Id.

is entitled to judgment as a matter of law." Moton v. Coward, 631 F.3d 1337, 1341 (11th Cir. 2011)(internal quotations and citations omitted). See also Fed. R. Civ. P. 56(c)(2). "The moving party may meet its burden to show that there are no genuine issues of material fact by demonstrating that there is a lack of evidence to support the essential elements that the non-moving party must prove at trial." Moton, 631 F.3d at 1341 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The standard for creating a genuine dispute of fact requires the court to "make all *reasonable* inferences in favor of the party opposing summary judgment," Chapman v. A1 Transp., 229 F.3d 1012, 1023 (11th Cir. 2000)(en banc)(emphasis added), not to make all *possible* inferences in the non-moving party's favor. As a *pro se* litigant, Plaintiff's pleadings are construed more liberally than those of a party represented by an attorney. Loren v. Sasser, 309 F.3d 1296, 1301 (11th Cir. 2002).

If the moving party meets its burden of production, the non-moving party "must present evidence beyond the pleadings that shows a reasonable jury could find in its favor to avoid the entry of summary judgment." Bell v. Sec'y, Fla. Dep't of Corr., 2012 WL 4465268 (11th Cir. 2012)(citing Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1301 (11th Cir. 2009); see also, Beard v. Banks, 548 U.S. 521, 529 (2006)(citations omitted); Celotex, 477 U.S. at 322; Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th

Cir. 1999). If there is a conflict in the evidence, the non-moving party's evidence is to be believed and "all justifiable inferences", Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, (1986) must be drawn in favor of the non-moving party, but those inferences are drawn "only to the extent supportable by the record," Penley v. Eslinger, 605 F.3d 843, 848 (11th Cir. 2010)(citation omitted). The court, however, "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, [the court's] inferences must accord deference to the views of prison authorities." Beard, 548 U.S. at 530. "A court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" Cuesta v. School Bd. of Miami-Dade County, 285 F.3d 962, 970 (11th Cir. 2002) (citations omitted). Nor are conclusory allegations based on subjective beliefs sufficient to create a genuine issue of material fact. Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). Conclusory allegations based on subjective beliefs are not sufficient to create a genuine issue of material fact. Leigh,

212 F.3d at 1217. Further, "allegations in affidavits must be based on personal knowledge, and not be based, even in part, 'upon information and belief.'" Pittman v. Tucker, 213 F. App'x 867, 870 (11th Cir. 2007)(quoting Pace v. Capobianco, 283 F.3d 1275, 1278 (11th Cir. 2002)). In summary, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial" and summary judgment is appropriate. Scott v. Harris, 550 U.S. 380.

### III. Finding of Facts and Conclusions of Law

#### A. Facts

Plaintiff, Kiontay Moore, a/k/a Timothy Bullock, filed a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983 against Defendant James Gehris (Doc. #1, Complaint).[2] The Complaint alleges an Eighth Amendment violation for excessive use of force stemming from an incident that occurred on February 21, 2009, when Plaintiff was confined in the Collier County Jail. See generally Complaint. As relief, Plaintiff seeks $300,000 in monetary damages. Id., 12.

#### 1. Plaintiff's Version

According to Plaintiff, he got into a "verbal altercation" with inmate Parson on February 21, 2009 during the evening meal. Id., 8-9. Inmate Parson attempted to strike Plaintiff, but was

---

[2] On June 24, 2011, the Court entered an Order of partial Dismissal, dismissing Defendants Freeman, Chauncey and Hyppolite pursuant to 28 U.S.C. § 1915 (Doc. #20).

unsuccessful and "fled to the other side of the day room." Id., 9. Plaintiff states he "followed" inmate Parson "to resolve the altercation" when he was ordered to the ground by Defendant Gehris. Id. "[D]ue to all the noise in the dayroom," Plaintiff claims he did not hear the order, so Defendant Gehris sprayed him with chemical agents, which hit him in his right eye. Plaintiff states that he then went to the ground "holding [his] eye" and Defendant Gehris and Hyppolite "cuffed" him. While he was lying "under the table," Defendant Gehris stuck his knee in the Plaintiff's back, "giving [Plaintiff] a sharp pain which led [Plaintiff] to rock side by side." Id. Plaintiff avers that the rocking motion angered Defendant Gehris, so he "shove[d] the O.C. spray can into my right eye and in up [sic] cutting my pupil and giving me another spray in my eye." Id. Afterwards, Plaintiff was taken to medical for decontamination. Id., 10. As a result of Defendant Gehris' actions, Plaintiff claims he sustained a cut in his eye, and had to be sent to an outside eye specialist. Id., 11. Plaintiff was prescribed steroid drops and was required to wear a patch over his eye. Id. Additionally, Plaintiff states he now requires glasses and continues to have problems with his eye. Id. Plaintiff's deposition testimony is essentially consistent with the allegations in his Complaint. See generally Exh. A at 7-13. During his deposition, Plaintiff additionally testified that while he was under the table, Defendant Gehris "punched me in my side," and

"shoved" the can of spray into his right eye and then sprayed him in that eye again. Id. at 8.

### 2. Defendant's Version

**Initial Use of Force - Application of Pepper Spray**

Defendant concedes that he used pepper spray only once on Plaintiff, but contends the use of the spray was necessary because Plaintiff failed to comply with Defendant's order to stop and continued running towards inmate Parson in an attempt to engage in a physical altercation. Motion at 9. Consequently, Defendant asserts that, although he used force, the force was necessary due to Plaintiff's noncompliance in order "to maintain order and security" in the Jail, "and for the safety of the Plaintiff, inmates, and corrections deputies" in the Jail. Exh. B at 3, ¶7.

Defendant Gehris arrived in housing area 6A in response to a code blue that was called over the radio due to an altercation occurring between two inmates during the evening meal. Exh. B at 2, ¶5; Exh. B-2. As Plaintiff was being escorted out of the area, he began yelling and running towards inmate Parson. Id. Defendant Gehris ordered Plaintiff to stop but he continued in the direction of inmate Parson. Id. As inmates began to clear out of the area, Defendant Gehris issued Plaintiff a final order to stop, but Plaintiff continued toward inmate Parson raising his hands as if to strike inmate Parson. Id. Defendant Gehris administered a short

burst of pepper spray toward Plaintiff on the right side of the face. Id.

The Court has reviewed the video surveillance evidence concerning the incident. The video is captured on two compact discs (Exhs. B-1(A) and B-1(B)) and runs from 3:53:40 p.m. until 4:00:00 p.m., capturing the entire incident in question without sound. The video reveals a large two story room with cells surrounding the perimeter of the room. The room is divided by a staircase leading to the second floor cells. A correctional officer is positioned near the bottom of the staircase. Each side of the room[3] contains five stationary metal tables with four attached seats. Approximately 50 inmates in orange jump-suits are sitting at the tables or milling about the room. The video shows Plaintiff on the left side of the room standing near the front table. Plaintiff is large in stature and in size, as compared to both other inmates and the correctional officers. Inmate Parson is seated at the front table located on the right side of the room.

From 3:54:15-25 the video shows inmate Parson getting up from his table and walking over to the left side of the room and exchanging words with Plaintiff. Inmate Parson takes a swing at Plaintiff with a closed fist, which appears to make contact with

---

[3]For purposes of clarification, when viewing the video the Court will refer to the side of room to the right of the steps as the "right side" and the side of the room to the left of the steps as the "left side."

the left side of Plaintiff's head.[4] An unidentified correctional officer positions himself between inmate Parson and Plaintiff. Inmate Parson moves backward toward the bottom of the staircase and Plaintiff is seen continuing to move toward inmate Parsons as the guard places his hand up to stop Plaintiff's forward movement. By 3:54:27, Inmate Parson had returned to his seat at the front table on the right side of the room. A correctional officer is seen standing next to Plaintiff, who appears to be agitated. The officer appears to be trying to contain Plaintiff to the left side of the room. At 3:54:44, other correctional officers, including Defendant Gehris arrive in the room. At that moment, Plaintiff pushes past the correctional officer at the foot of the staircase running in the direction of inmate Parson at a fast speed. Two correctional officers, including Defendant Gehris, run after Plaintiff. At 3:54:46-49, Plaintiff lunges toward inmate Parson as Defendant Gehris takes out his can of pepper spray, holds it in his right hand, and administers a burst in the direction of Plaintiff. At 3:54:49-51 Plaintiff puts his hands to the right side of his face and then lowers himself to the floor.

### Use of Force After Application of Pepper Spray

Defendant contends that Plaintiff's version of the events after he was sprayed are false. Motion at 12; Exh. B at 3, ¶5.

---

[4]Plaintiff denies that inmate Parson's fist made contact. Complaint at 9.

Defendant maintains that he did not stick his knee into Plaintiff's back, did not punch Plaintiff, and did not administer any other pepper spray after Plaintiff was on the floor. Exh. B at 2, ¶5; Exh. B-2. After Plaintiff lowered himself to the floor, Defendant placed hand restraints on Plaintiff "without incident." Exh. B at 2, ¶5. Defendant Gehris then escorted Plaintiff to medical for decontamination. Id.; Exh. B-2.

At 3:54:51, the videotape shows Plaintiff laying face down on the floor positioned between two tables. Plaintiff is not "under" either table. From 3:54:54 to 3:55:00, Defendant Gehris proceeds around the table located on Plaintiff's left side past Plaintiff's head and bends down from his waist and places hand restraints on Plaintiff. Plaintiff's body is visible and he is not rocking back and forth, but is laying still as Defendant Gehris applies the hand restraints. At no time does Defendant Gehris place his knee, or any other part of his body, onto Plaintiff. Defendant does not punch Plaintiff. Defendant does not administer pepper spray to Plaintiff after he is on the ground,. Defendant does not place the spray can anywhere near Plaintiff's face or eye. From 3:55:01 to 3:55:07, Defendant Gehris, holding onto Plaintiff's right arm, lifts Plaintiff into a kneeling position. From 3:55:08 to 3:55:10, another correctional officer takes Plaintiff's left arm and, along with Defendant Gehris, Plaintiff is brought to a standing position. From 3:55:11-3:55:39, Plaintiff is seen being escorted from the

room by Defendant Gehris and the other correctional officer. Although not entirely clear, it appears that Plaintiff is resisting the two officers as he appears to pull away from the officers, but he officers do not loose their grip or apply any additional force while escorting Plaintiff.

After the incident, Plaintiff is taken to medical and examined. Exh. C. According to the nursing report, Plaintiff complained that he was "pepper sprayed" and "couldn't see out of his right eye." Id. Upon examination, medical personnel noted that Plaintiff was involved in a an "altercation" and had sustained a "2" contusion" to the left side of his head[5] and had pepper spray in both eyes. Id. Plaintiff's eyes were flushed and he was provided with tylenol. Id. The next day, Plaintiff presented himself to medical complaining of eye pain. Exh. D. Plaintiff was evaluated and swelling was noted around Plaintiff's eye, but the pupil and eyelid appeared normal. Id. Medical personnel diagnosed Plaintiff with "Iritis."[6] Id. Plaintiff was seen by outside retina specialist who confirmed the diagnosis of Iritis in both eyes and prescribed Pred Forte (steroid eyedrops). Exh. E. Plaintiff was not diagnosed with a "cut" in his eye. Id. At a

---

[5]Plaintiff does not claim that Defendant hit him in his head. However, the placement of the contusion on the body diagram on the medical form is consistent with the location of where inmate Parson punched Plaintiff with his closed fist.

[6]Iritis is an inflamation to the iris. Www.ncbi.nlm.nih.gov.

subsequent follow-up appointment on December 9, 2009, Dr. Sharma determined that Plaintiff "did not have any evidence of inflammation in either eye," Plaintiff's intraocular pressures were within normal limits, and there was no evidence of corneal disease. Id. Dr. Sharma recommended that Plaintiff's eye drops be tapered off. Id.

In connection with the February 21, 2009 incident, Plaintiff was charged with violations of Rule 2 (fighting with another person), Rule 27 (refusing to obey an order of any staff member), and Rule 33 (conduct which disrupts or interferes with the security or orderly running of the institution). Exh. 2 at 3, ¶6. Plaintiff admitted to the various disciplinary infractions, and received twenty days in disciplinary confinement and the loss of certain privileges. Exh. 3.

**B. Applicable Law**

Under the Eighth Amendment,[7] to establish that an excessive use of force claim constitutes cruel and unusual punishment, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and

---

[7]It is unclear whether Plaintiff was an inmate or a pretrial detainee at the time of the incident. The Eleventh Circuit recognizes that the Fourteenth Amendment protects pretrial detainees from the use of excessive force; however, because the Eighth Amendment standard is the same, "decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees." Cottrell v. Caldwell, 85 F.2d 1480, 1490 (11th Cir. 1996).

sadistically to cause harm." Wilkins v. Gaddy, ___ U.S. __, 130 S. Ct. 1175, 1178 (2010); Skrtich v. Thornton, 280 F.3d 1295, 1300 (11th Cir. 2002). The court examines the following factors in evaluating whether the force was applied maliciously and sadistically:

> (1) the extent of injury; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them.

Whitley v. Albers, 475 U.S. 312, 321 (1986). See also Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009).

Additionally, a plaintiff must demonstrate that the amount of force used was more than *de minimis*, provided that the type of force is not of the kind that is "repugnant to the conscience of mankind." Hudson v. MacMillan, 503 U.S. 1, 10 (1992). In determining whether the amount of force used against an inmate was *de minimis,* a court may consider the extent of the injuries suffered by the inmate. Skrtich, 280 F.3d at 1302. Nevertheless, a court ultimately should evaluate an excessive force claim "based on the nature of the force rather than the extent of the injury." Wilkins v. Gaddy, ___ U.S. __, 130 S. Ct. at 1177.

**C. Application of Law to Facts**

Based upon a review of the record, the Court finds that Plaintiff cannot sustain his burden of showing that Defendant

Gehris violated his constitutional rights by applying an excessive use of force. The entire incident was captured on video surveillance, albeit without sound, by at least two different closed-circuit cameras. "Where the video obviously contradicts Plaintiff's version of he facts, [the Court] accepts the video's depiction instead of Plaintiff's account." Pourmoghani-Esfahani v. Gee, 625 F.3d 1313, 1315 (11th Cir. 2010)(citations omitted).

Here, the evidence reveals that at the time Defendant Gehris applied at most, *de minimis* force, and only after Plaintiff's actions were received by officials as presenting a threat to the order and security in the jail. Defendant Gehris responded to a code blue to witness Plaintiff running past a correctional officer, who was trying to restrain him on the left side of the room, and toward another inmate. The type of force used by Defendant Gehris was limited to a single burst of pepper spray and was intended only to halt Plaintiff's aggressive movements toward another inmate. Plaintiff's behavior created a security risk within the jail, therefore justifying Defendant Gehris' use of force to quell Plaintiff's potential threat to others. In the prison context, when the "ever-present potential for violent confrontation and conflagration ripens into **actual** unrest and conflict, the admonition that a prison's internal security is peculiarly a matter normally left to the discretion of prison administrator, carries special weight." Whitley v. Albers, 475 U.S. at 321 (internal

quotations and citations omitted, emphasis in original). Here the uncontroverted evidence demonstrates that Plaintiff was aggressively pursuing another inmate with the intent to inflict imminent harm. The incident created a commotion in a day room filled with at least fifty other inmates and a handful of guards. Defendant Gehris' considered judgment to administer chemical agents on Plaintiff is entitled to deference. Consequently, in viewing the evidence in the light most favorable to Plaintiff, the Court finds no evidence that would support a reliable finding of maliciousness against Defendant in his choice to administer pepper spray on Plaintiff.

The record also unequivocally demonstrates that after the initial use of force, no other force was used on Plaintiff. More specifically, the video reveals that Plaintiff voluntarily lowered himself to the ground after the first application of the spray. Defendant Gehris' contact with Plaintiff after he was on the ground was to apply hand-restraints on Plaintiff, which he did while bending over Plaintiff. Defendant Gehris' only other contact with Plaintiff was to hold onto Plaintiff's right arm and shoulder as he assisted Plaintiff up from the floor into a kneeling and then standing position and as he escorted him to medical. Consequently, Plaintiff's averments that Defendant Gehris stuck his knee into Plaintiff's back, punched him in the side, stuck the spray canister

into his eye, and pepper sprayed him after he was restrained are disingenuous and wholly refuted by the video evidence.

Consequently, based upon the record before the Court and the applicable law, the Court finds that Defendant Gehris is entitled to summary judgment as a matter of law.

ACCORDINGLY, it is hereby

**ORDERED**:

1. Defendant Gehris' Motion for Summary Judgement (Doc. #49) is **GRANTED**.

2. The **Clerk of Court** shall enter judgment accordingly, terminate any pending motions and deadlines, and close this file.

**DONE AND ORDERED** at Fort Myers, Florida, on this __18th__ day of January, 2013.

_____
JOHN E. STEELE
United States District Judge

SA: hmk
Copies: All Parties of Record